**Opinion filed August 20, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00319-CR

_____

**KEVIN RAY LONG, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 8104D**

### M O D I F I E D   M E M O R A N D U M   O P I N I O N

Subsequent to our original opinion, the United States Supreme Court issued its decision in *Melendez-Diaz v. Massachusetts*, ___ U.S. ___, 129 S.Ct. 2527, ___ L.Ed.2d ___ (2009). Under the authority of TEX. R. APP. P. 50, we withdraw our original opinion and judgment and issue this modified opinion.

The jury convicted Kevin Ray Long of the offense of murder, made an affirmative deadly weapon finding, and assessed punishment at confinement for life and a $10,000 fine. We affirm.

*Issues*

Appellant presents four points of error on appeal. In the first point, appellant contends that the admission of the victim's toxicology report into evidence violated appellant's Sixth Amendment right to confront the witnesses against him. In the second point, appellant argues that the inclusion

in the jury charge of a limiting instruction relating to self-defense was erroneous. In his third point, appellant challenges the admission of evidence concerning an extraneous bad act even though the State had not timely notified the defense of its intent to introduce the bad act. In his fourth point, appellant challenges the exclusion of evidence: a letter that he offered as a prior consistent statement.

## Background Facts

Appellant was convicted for the murder of seventeen-year-old Jonathan Bermea. The evidence showed that appellant shot Bermea in the back with a .380 caliber semiautomatic handgun and that Bermea died as a result of that gunshot. The shooting occurred in the living room of a house on Fannin Street that was associated with the Brown Pride gang. Appellant went there to purchase methamphetamine from Rocky Santana.

Two witnesses testified that appellant walked into the house accusing the three people sitting in the living room (Bermea, Alfredo Alcala Navejas, and Jason Alvarez) of taking his scales. According to Navejas, appellant walked in with his pistol drawn and immediately said, "Which one of you m----r-f----rs stole my scale?" Bermea replied, "Bitch, nobody has got your scales." Appellant then tried to hit Alvarez, and Bermea got up and tried to run. As Bermea started down the hallway, appellant pointed the handgun at him and fired one shot. Alvarez gave a similar version of events but said that appellant drew his weapon while he was mouthing, not before he entered the house. After shooting Bermea, appellant pointed the gun at Navejas and Alvarez but started "freaking out on himself," becoming shaky and teary-eyed, and then fled.

Appellant was apprehended the following day. The handgun that appellant used was recovered at the time of the arrest. Expert testimony established that appellant's DNA was on the trigger and that the bullet retrieved from Bermea's body was fired from that handgun.

## Toxicology Report versus Right to Confront

In the first point, appellant argues that the admission of Bermea's toxicology report performed as part of the autopsy, but by a person who did not testify at trial and whom he had not had an opportunity to cross-examine, violated appellant's Sixth Amendment right to confront the witnesses against him. *See Crawford v. Washington*, 541 U.S. 36 (2004). In *Crawford*, the Court held that the Confrontation Clause of the Sixth Amendment bars the admission of testimonial

statements of a witness who does not appear at trial unless he is unavailable to testify and the defendant had a prior opportunity to cross-examine him. *Id.* at 59; *Russeau v. State*, 171 S.W.3d 871, 880 (Tex. Crim. App. 2005).

Dr. Lloyd White performed the autopsy of Bermea, and he testified at trial. The toxicology report had been performed by his office; however, the toxicology tests had not been performed by Dr. White. Appellant's trial counsel timely objected to any testimony by Dr. White concerning the toxicology report. The trial court allowed the toxicology report as evidence under the hearsay exception for statements for purposes of medical diagnosis.

The initial question is whether the toxicology report, included within the autopsy report, was testimonial in nature. In *Melendez-Diaz*, the prosecution introduced certificates of state laboratory analysts stating that material seized by the police and connected to the defendant was cocaine of a certain quantity. The United States Supreme Court held that the admission of the certificates violated the petitioner's Sixth Amendment right to confront the witnesses against him, citing *Crawford*. The court reasoned that confrontation is one means of assuring accurate forensic analysis. *Melendez-Diaz*, 129 S.Ct. at 2542. Based on *Melendez-Diaz*, we hold that the toxicology report was testimonial in nature and that the trial court erred in allowing the toxicology report to be introduced as evidence.

Because the error was of constitutional dimension, we must next determine whether the error was harmless beyond a reasonable doubt and whether it contributed to appellant's conviction or punishment. TEX. R. APP. P. 44.2(a); *Davis v. State*, 203 S.W.3d 845, 849-53 (Tex. Crim. App. 2006). We note that, after holding that the admission of the forensic analysis was error, the *Melendez-Diaz* Court stated that it expressed "no view as to whether the error was harmless." *Melendez-Diaz*, 129 S.Ct. at 2542 n.14.

Appellant's theories were that he shot Bermea by mistake or in self-defense. Dr. White testified that the results stated in the toxicology report were negative for alcohol or drugs. Appellant argues on appeal that this testimony made Bermea appear to be an innocent bystander who was not part of the group using drugs at the house; therefore, the evidence of the toxicology tests was significant in moving the jury from a state of non-persuasion to one of persuasion on the issue of murder (instead of self-defense) and punishment. We disagree.

3

There was no evidence that Bermea made any type of threats against appellant at the time of the shooting. To raise an issue of provocation, there must be sufficient evidence of the deceased's conduct just prior to death, and that evidence must be sufficient to be considered provocation. The presence of drugs alone is insufficient for such an inference. *Moore v. State*, 882 S.W.2d 844, 849 (Tex. Crim. App. 1994); *Hernandez v. State*, 643 S.W.2d 397, 401 (Tex. Crim. App. 1982). Nor was there any evidence in the record of Bermea's conduct in the past that would raise the issue of provocation. Moreover, two other witnesses testified that Bermea was not using drugs that night. Rocky Santana, appellant's own witness, testified that Bermea was not using drugs that night – "He was just there." Navejas also testified that Bermea "didn't do drugs."

The evidence was that appellant came in accusing Bermea, Navejas, and Alvarez, who were sitting in the living room, of taking his scales. Appellant was waving a gun at them, and they were scared. Navejas testified that none of them had a gun, that appellant tried to pistol-whip Alvarez, and that Bermea got up and tried to run. As Bermea started down the hallway, appellant shot him in the back. Appellant then pointed the pistol at Navejas and asked Navejas if he wanted to die.

Appellant testified and gave his version of the events. From the record, it is easy to understand why the jury did not believe his contention that the shooting was an accident or self-defense. But whether Bermea was on drugs was irrelevant to appellant's defensive issues. In response to a question by his counsel, appellant testified as follows:

> Never really didn't pay too much attention to see if they were high on drugs, really didn't strike me as very important.

After a review of the complete record, we find that the trial court's error in admitting the toxicology report was harmless beyond a reasonable doubt and that it did not contribute to appellant's conviction or punishment. Appellant's first point of error is overruled.

*Jury Charge*

In his second point, appellant argues that the trial court erred in including in the jury charge a limiting instruction relating to self-defense. The complained-of instruction reads as follows:

> You are further instructed as part of the law of this case and as a qualification to the use of self-defense, that the use of force by the Defendant against another is not justified . . . if the actor sought an explanation from or discussion with the other person

4

concerning the Defendant's differences with the other person while the Defendant was unlawfully carrying a weapon.

This instruction generally tracks the language found in TEX. PENAL CODE ANN. § 9.31(b)(5) (Vernon Supp. 2008), but appellant argues that the instruction is not supported by the evidence. We disagree.

The record shows that appellant was unlawfully armed with a handgun when he entered the house. Although controverted by appellant's testimony that he went to the house to buy drugs not to discuss differences with anybody there, there was evidence that appellant entered the house and immediately demanded the return of his scales, that appellant accused the young men in the living room of stealing his scales and commanded them to strip, and that appellant either had his weapon drawn when he entered the house or drew it within one minute after entering. The trial court did not err in giving the instruction pursuant to Section 9.31(b)(5) because there was some evidence to support it. Appellant's second point of error is overruled.

*Lack of Notice of Punishment Evidence*

In his third point, appellant contends that the trial court erred in admitting as punishment evidence of an unadjudicated, extraneous bad act because the State had not given proper notice of its intent to introduce the bad act. Over appellant's objection, the State introduced evidence that appellant had previously fired a gun into the air while driving through a residential neighborhood.

Pursuant to TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (Vernon Supp. 2008), appellant had timely requested notice of the State's intent to introduce prior bad acts as punishment evidence. Article 37.07, section 3(g) provides that, when timely requested, such notice "shall be given." It is undisputed that the State did not notify appellant of its intent to introduce evidence of appellant firing a gun into the air. The State asserted that it was unaware of the incident until the morning of the punishment hearing and also that appellant opened the door to evidence of the incident by offering evidence of his nonviolent character. The record shows that, during cross-examination of appellant's girlfriend, defense counsel asked if she thought appellant was a violent person. Appellant's girlfriend answered, "I don't think so." On redirect, the State inquired about the incident in question.

Although we do not agree that appellant opened the door, we conclude that any error was harmless pursuant to TEX. R. APP. P. 44.2(b). The record shows that the State called appellant's

5

girlfriend as a witness. During direct examination by the State, appellant's girlfriend revealed that appellant had been charged with sexually assaulting her. Appellant's girlfriend also read several excerpts from letters that appellant had sent to her. In these letters, appellant said that he has to fight if his cousin tells him to so that he can join a gang, that he "won't be locked up too long, and . . . [he is] going to get out and rampage on dudes and chicks," that she had better sell herself if he needed money, that he had to live up to his new reputation, and that he is "a bomb waiting to explode." On redirect, appellant's girlfriend read more excerpts from appellant's letters, including: "I only beat you up once over food," and "I never beat you over fat ho. I slapped you cause you almost wrecked her car on my side." In addition to the testimony of appellant's girlfriend, three other witnesses testified for the State. Appellant's violent character, his assault of another inmate and a correctional officer while in jail, and his failure to follow the terms and conditions of community supervision for a prior offense for delivering marihuana were shown through these witnesses. We hold that the introduction, without notice, of the incident involving appellant firing a gun into the air did not affect appellant's substantial rights; did not have a substantial and injurious effect on the jury's verdict; and, therefore, does not constitute reversible error under Rule 44.2(b). *See Rodgers v. State*, 111 S.W.3d 236, 244-48 (Tex. App.—Texarkana 2003, no pet.). Appellant's third point of error is overruled.

*Exclusion of Letter*

In his final point, appellant asserts that the trial court abused its discretion in excluding a letter from Rocky Santana because the letter was admissible as a prior consistent statement under TEX. R. EVID. 801(e)(1)(B). Rule 801(e)(1)(B) provides that a statement is not hearsay if the declarant testifies and is subject to cross-examination and if the statement is consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

The record shows that Santana testified as a defense witness at trial. He testified that, right after the shooting, appellant's expression "was like he wanted to cry, like he didn't mean to . . . shoot." Santana also testified that, just before backing out the door, appellant said he "didn't mean to do it." Appellant testified after Santana. The State's cross-examination of appellant revealed that appellant's friends and family members located Santana and may have talked to him about testifying,

that appellant was afraid Santana held a grudge against him, but that Santana was the best chance appellant had for the truth to be told about the circumstances surrounding this offense. Appellant contends that this cross-examination impeached Santana and that the trial court should have admitted the letter offered by appellant to rebut the implication that Santana had recently fabricated his story due to the influence of appellant's family and friends.

The trial court's decision to admit or exclude evidence is reviewed on appeal for an abuse of discretion. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). We cannot hold that the trial court abused its discretion in excluding the letter. First, the record shows that, at the conclusion of Santana's testimony, he was excused without any request that he be subject to recall. Santana could not be located when appellant offered the letter into evidence. Thus, Santana was no longer "subject to cross-examination" as required by Rule 801(e)(1)(B). Furthermore, the letter was not authenticated pursuant to TEX. R. EVID. 901, and there is no indication in the record showing that the letter was written prior to the alleged improper influence by appellant's family and friends. Appellant's fourth point of error is overruled.

### This Court's Ruling

The judgment of the trial court is affirmed.

TERRY McCALL

JUSTICE

August 20, 2009

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.