Opinion
issued December 29, 2011



In The

Court of Appeals

For The

First District of Texas

————————————

NOS. 01-10-00749-CR &
01-10-00906-CR

———————————

Fredric Tyres Horton, Appellant

V.

State of
Texas, Appellee



 



 

On Appeal from the 405th District Court 

Galveston County, Texas



Trial Court Case Nos. 09CR3646 and
09CR3647

 



MEMORANDUM OPINION

          Appellant,
Fredric Tyres Horton, was charged with indecency with a child[1] and
aggravated sexual assault of a child.[2] 
Appellant pleaded guilty to the indecency with a child charge, and he proceeded
to a bench trial on the aggravated sexual assault of a child charge.[3]  The trial
court found him guilty and assessed his punishment at twenty years’
imprisonment for each offense, to run concurrently.  In two issues, appellant
argues that (1) the trial court erred in denying his motion for new trial and
his plea was involuntary and (2) he was denied effective assistance of counsel.

          We affirm.

                                                                          
Background

Appellant was charged with indecency with a child and
aggravated sexual assault of a child, his step-daughter.  He pleaded guilty to
indecency with a child and signed written admonishments and waivers. 
Appellant’s trial counsel and the trial court both admonished him on the record
at a pretrial hearing regarding his guilty plea, and he acknowledged that he
was entering his plea freely and voluntarily.  Appellant pleaded “not guilty”
to the offense of aggravated sexual assault of a child and proceeded to a bench
trial on that charge.

The complainant was thirteen years old at the time of
trial.  She testified that appellant touched her chest and genitals with his
hand “a lot” and that he made her touch his genitals with her hand “a lot.” 
She also testified that appellant touched her genitals with his mouth on “a
couple” of occasions.  She testified that on some occasions appellant would
have on clothes, and on others, he would not.  She also testified that
sometimes she had on clothes and sometimes she did not.  She testified that the
touching began when she was about five or six years old and continued until she
was approximately ten years old.

Shannon Samuelson, the outreach coordinator and a forensic
interviewer at the Advocacy Center for Children of Galveston County, testified
as the outcry witness.  She testified that the complainant told her that
appellant first made her touch his “thingy” when she was five years old and
that subsequent incidents occurred, including an incident on New Year’s Day
when she was ten.  Samuelson testified that the complainant related that appellant
had put his mouth on her genitals and had made her put her mouth on his
genitals.  The complainant also told Samuelson that appellant told her not to
tell anyone about these incidents or “she would have to leave and never come
back.”

Dr. Collier Cole, a psychologist specializing in treating
sex offenders, testified on behalf of appellant.  Dr. Cole testified that he
first met appellant in June 2006.  Appellant indicated to Dr. Cole that he had
offended against his step-daughter, the complainant, and had reported “on his
own to CPS.”  Dr. Cole had been treating appellant since that time, and he
testified that appellant had been “showing good progress.”  Dr. Cole testified
that appellant kept his appointments and that his wife was cooperative in his
treatment and agreed to act as a chaperone—to be physically present when he was
around their children—which persuaded CPS to allow him to move back into the
home in 2007.  Appellant eventually related to Dr. Cole an incident that had
occurred some months previously in which appellant claimed that he awoke to
find the complainant in his bed with her hand in his pants and that she then
put his hand in her pants.  Dr. Cole recommended that appellant and his wife get
counseling for the complainant and focus on providing proper supervision of
contact between appellant and the complainant, but he did not report this
incident because appellant did not initiate the contact.  Appellant did not
mention any instances in which he reoffended against the complainant, nor did
appellant mention any incidents involving oral sex with the complainant,
although appellant did tell Dr. Cole that he was using drugs when some of the
earlier instances of touching occurred and that he could not remember
everything clearly.

Dr. Cole also testified that there were some instances in
which appellant talked to him about a concern that the complainant would make
up allegations against him.  He testified that, on one occasion, appellant
refused to allow the complainant to go to a pool party, and she wrote a note
saying, “‘You’re going to let me go to this party if I take my clothes off,’ or
something to that effect.”  Dr. Cole testified that appellant told him that this
was an incident the complainant made up to try to “get [appellant] in trouble.”

Appellant’s father, Freddie Lee Horton, also testified on
appellant’s behalf.  Mr. Horton testified that appellant confessed “what he had
done” and told him that he was thinking about committing suicide.  Mr. Horton
took appellant to the hospital and informed hospital personnel and police about
appellant’s confession and suicidal thoughts.  Mr. Horton testified that
appellant never admitted that he had oral sex with the complainant.  Mr. Horton
also testified that the complainant, his granddaughter, never said anything to
him about the alleged sexual abuse.

Finally, appellant himself testified.  He testified that
he decided to confess what he had done to his father as part of a spiritual
journey.  He testified that the first time he touched the complainant was
“right before school was out before her eighth birthday” and that he did not
touch her again after that.  However, he testified that there was a second
incident in which she grabbed him.  He stated that he had never had oral sex
with the complainant.

His attorney asked appellant about a videotaped statement
that he had made in 2009 in which the interviewer asked him about oral sex and
he replied, “yes.”  Appellant explained that his response was related to an
incident in which the complainant wanted a cell phone that her parents would
not let her have.  He testified that Dr. Cole had gotten this incident confused
somehow, and it was not related to a pool party.  He testified that the
complainant gave a note to his wife that was in a child’s handwriting, but was
written as if it were from appellant to the complainant.  It said, “If you let
me see you naked, I will give you the phone back.”  Appellant then testified,
“And I come to find out that [the complainant] has been, you know, throwing
away letters and she’s denying everything that it ever happened.”  His counsel
also asked him about a polygraph test he took in 2009, in which the questioner
asked, “Did you have oral sex?” and appellant answered, “both.”  He testified
that he answered in the affirmative because the complainant had told him that
they did in 2004.  Appellant also testified that he had been drug free since
2005 and that his memory was better from that time forward.

Appellant testified that he originally believed that the
complainant would tell the truth about what happened between them, but,
“[s]ince then, she’s wrote a letter.  Since then, she’s stolen money from her
mother and her aunt.”  He testified that he no longer believed the
complainant’s assertion that he had had oral sex with her.

The trial court found appellant guilty of aggravated
sexual assault of a child and assessed his punishment at twenty years’
imprisonment.

Appellant filed a timely motion for new trial, asserting
that material evidence favorable to him had been discovered since the trial. 
Appellant provided the affidavit testimony of his sister, Alisha Horton, who stated
that the complainant informed her that she was not being truthful and that
appellant did not sexually assault her.  Appellant also alleged that he received
ineffective assistance of counsel because his trial counsel failed to procure
trial witnesses with material information.  Regarding his guilty plea to the charge
of indecency with a child, appellant argued that had the evidence from additional
witnesses been known to him at the time of his plea, he might not have entered
a guilty plea.

At the hearing on the motion for new trial, Alisha Horton
testified that she spoke with the complainant about the allegations sometime
after “they added the second charge” for aggravated sexual assault.  She asked,
“Did [appellant] really do this to you while your mother was watching?” and she
told the complainant that, even though appellant was her brother, if he really
did do the things the complainant accused him of, she wanted to know because
“right is right.”  Alisha stated that the complainant told her, “No, it didn’t
happen.”  When Alisha asked her why she said it did, the complainant told her
that “she said it because she wanted to go to a pool party and she wanted her
cell phone back.”  Alisha testified that she told the complainant that she
needed to tell people the truth.  However, Alisha never told police, the
district attorney, or anyone else what the complainant had said, and she did
not have an opportunity to speak to appellant’s counsel.  Alisha testified that
she told appellant’s trial counsel after the guilty verdict that she would have
testified that the complainant had recanted to her, and the attorney responded,
“Well, I didn’t know.  Nobody told me.”  Alisha clarified that the complainant
did not recant all of the alleged abuse and stated, “The initial charge
[relating to indecency with a child], [the complainant] did tell me that it
happened.”  Alisha also testified that she had a low opinion of the
complainant’s truthfulness in general. 

Lois Horton, appellant’s mother, also testified at the motion
for new trial hearing.  She testified that she had lived with appellant and his
family on two occasions, including the time when the alleged aggravated sexual
assault occurred.  She testified that she was present in the household “a lot”
and observed appellant interact with the complainant and his other children
regularly.  She never saw any indication that sexual abuse might have
occurred.  Lois stated that she talked with appellant’s trial counsel on two
occasions.  Counsel asked her about the time period in which she lived with
appellant’s family and about the family’s schedules.  Lois also testified that
appellant’s trial counsel talked to her about serving as a witness, but Lois
did not actually testify.  Lois related that appellant’s counsel “said she
decided that she was not going to call me because I had temporary custody of
the children, that she felt that it was in the best interest that I not testify.” 
Regarding her opinion of the complainant’s truthfulness, Lois testified that
the complainant would “bend the truth if she thinks it’s going to please you. 
She’s very lovable and she does for the most point tell the truth.  But she
will at times when she feels like, you know, it’s going to hurt her, she’ll
lie.”

Appellant’s trial counsel did not testify at the motion
for new trial hearing, nor did she provide an affidavit.

                                                             
Motion for New Trial

In his first issue, appellant argues that the trial court
erred in denying his motion for new trial.  Appellant also argues, in part of
his first issue, that his plea to the indecency with a child charge was
involuntary.  In his second issue, appellant argues that he received
ineffective assistance of counsel.  Appellant moved for a new trial on the
ground that material evidence favorable to him had been discovered since the
trial.  He also argued that his trial counsel’s failure to discover this
evidence and to call favorable witnesses constituted ineffective assistance of
counsel and that his guilty plea in the indecency with a child case was
involuntary because he did not have this information at the time he made his
guilty plea.

A.           
Standard of Review

Article 40.001 of the Code of Criminal Procedure provides
that “[a] new trial shall be granted an accused where material evidence
favorable to the accused has been discovered since trial.”  Tex. Code Crim. Proc. Ann. art. 40.001
(Vernon 2006); Wallace v. State, 106 S.W.3d 103, 107 (Tex. Crim. App.
2003).  Thus, a defendant is entitled to have his motion for new trial granted
if (1) the newly discovered evidence was unknown to him at the time of trial;
(2) his failure to discover the new evidence was not due to his lack of due
diligence; (3) the new evidence is admissible and not merely cumulative,
corroborative, collateral, or impeaching; and (4) the new evidence is probably
true and will probably bring about a different result in a new trial.  Wallace,
106 S.W.3d at 108 (citing Keeter v. State, 74 S.W.3d 31, 36–37 (Tex.
Crim. App. 2002)).  A movant’s failure to establish any of these four
requirements warrants the denial of the motion for new trial.  Delamora v.
State, 128 S.W.3d 344, 354 (Tex. App.—Austin 2004, pet. ref’d).

We review the denial of a motion for new trial for an
abuse of discretion.  State v. Herndon, 215 S.W.3d 901, 906 (Tex. Crim.
App. 2007).  In reviewing the trial court’s ruling, we are mindful of
the fact that the trial court is the sole arbiter of the credibility of the
witnesses and evidence offered.  Salazar v. State, 38 S.W.3d 141, 148
(Tex. Crim. App. 2001); see also Etter v. State, 679 S.W.2d 511, 515
(Tex. Crim. App. 1984) (holding that credibility of witnesses presented in
motion for new trial and probable truth of new evidence are matters to be
determined by trial court).  We defer to the trial court’s determination of
historical facts, presume all reasonable factual findings that could have been
made against the losing party were made against that party, and defer to all
reasonable implied factual findings that the trial court might have made.  Quinn
v. State, 958 S.W.2d 395, 402 (Tex. Crim. App. 1997).  Then, in light of
the implied factual findings, we determine whether the trial court, in denying
the motion for new trial, was arbitrary and unreasonable.  Herndon, 215
S.W.3d at 907; see also Tex. R.
App. P. 21.3 (proving list of non-exclusive grounds for granting new
trial, including when appellant is “denied counsel” or “when the verdict is
contrary to the law and the evidence”); Jones v. State, 711 S.W.2d 35,
37 (Tex. Crim. App. 1986) (holding that if it appears to trial court that,
under circumstances of case, weight or credibility of new evidence is not such
that it would probably bring about different result in new trial, it is within
trial court’s discretion to deny motion).

B.           
Presentation of New Evidence

Alisha Horton testified about a conversation she had had with
the complainant sometime after appellant was charged with aggravated sexual
assault.  Alisha asked, “Did [appellant] really do this to you while your
mother was watching,” and complainant answered, “No, it didn’t happen.”  Alisha
testified that the complainant explained that she was motivated to lie because
she wanted to go to a pool party and get her cell phone back.

Given the nature of the testimony offered, the trial court
could have reasonably concluded that the new evidence was not likely to “bring
about a different result in a new trial.”  See Wallace, 106 S.W.3d at
108.  Alisha’s statement does not indicate that the complainant made a clear
recantation of the alleged aggravated sexual assault, and the complainant made
the statement to appellant’s sister, which indicates that the complainant might
have felt some pressure to comply with the wishes of Alisha, her aunt.  Under
the circumstances of this case—especially in light of the complainant’s
subsequent testimony at trial that the alleged aggravated sexual assault did
occur—the trial court may have determined that the weight or credibility of
this new evidence was not such that it would probably bring about a different
result in a new trial.  See Jones, 711 S.W.2d at 37.  Furthermore, the
trial court could have concluded that the evidence was merely impeaching,
cumulative, or corroborative and so was not a valid basis for the granting of a
new trial.  While Alisha’s testimony could have been admitted, as appellant
argues, to impeach the complainant and to challenge her character and
credibility, such new evidence is not a valid basis for granting a new trial.  See
Shafer v. State, 82 S.W.3d 553, 557 (Tex. App.—San Antonio 2002, pet.
ref’d) (holding that when only purpose of new evidence is to impeach witness’s
trial testimony, this is “an impermissible reason to grant a second trial based
on new evidence”).  Additionally, both Dr. Cole and appellant testified at
trial about an incident in which the complainant lied about appellant’s conduct
toward her in an effort to get her way regarding attending a pool party or
having her cell phone returned.  Thus, further testimony that the complainant
had lied about allegations against appellant for those same reasons was
cumulative or corroborative and, therefore, does not support granting a new
trial.  See Wallace, 106 S.W.3d at 108.

Lois Horton, appellant’s mother, testified only that she
was living with appellant and his family during the time period that the
alleged aggravated sexual assault occurred and that she did not observe any
abuse or inappropriate behavior.  Again, the trial court could have concluded
that this testimony, in the circumstances of this case, was not likely to
produce a different result in a new trial, as Lois could only testify that she
did not see anything.  See Wallace, 106 S.W.3d at 108; Jones, 711
S.W.2d at 37.  Likewise, Lois’s testimony about the complainant’s reputation
for truthfulness could have been admitted to impeach the complainant and attack
her credibility, but impeachment is not a valid ground for granting a new trial. 
See Shafer, 82 S.W.3d at 557.

We overrule appellant’s first issue as it relates to his
claim that the trial court erred in denying his motion for new trial on the
ground of introduction of newly discovered evidence.

C.           
Ineffective Assistance of Counsel

In his second issue, appellant argues that he was denied
effective assistance of counsel because his trial counsel failed to properly
investigate his case and thus failed to discover Alisha Horton’s testimony.

1.            
Standard of Review

To
make a showing of ineffective
assistance
of counsel,
an appellant must demonstrate that (1) his counsel’s performance was deficient
and (2) there is a reasonable probability that the result of the proceeding
would have been different but for his counsel’s deficient performance.  Strickland
v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Cannon v. State, 252 S.W.3d 342, 348–49 (Tex. Crim. App.
2008).  The appellant must prove ineffectiveness by a preponderance of the
evidence.  Perez v. State,
310 S.W.3d 890, 893 (Tex. Crim. App. 2010).  

The
appellant must first show that his counsel’s performance fell below an
objective standard of reasonableness.  Robertson v. State, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006);
Thompson v. State, 9
S.W.3d 808, 812 (Tex. Crim. App. 1999).  The second prong of Strickland
requires the appellant to demonstrate prejudice—a reasonable probability that,
but for his counsel’s unprofessional errors, the result of the proceeding would
have been different.  Strickland,
466 U.S. at 694, 104 S. Ct. at 2068; Thompson, 9 S.W.3d at 812.  A reasonable
probability is a probability sufficient to undermine confidence in the outcome.
 Strickland, 466 U.S.
at 694, 104 S. Ct. at 2068. 

We indulge a strong presumption that
counsel’s conduct fell within the wide range of reasonable professional
assistance, and, therefore, the appellant must overcome the presumption that
the challenged action constituted “sound trial strategy.”  Id. at 689,
104 S. Ct. at 2065; Williams v. State,
301 S.W.3d 675, 687 (Tex. Crim. App. 2009).  Our
review is highly deferential to counsel, and we do not speculate regarding
counsel’s trial strategy.  See Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).
 To prevail, the appellant must provide an appellate record that affirmatively
demonstrates that counsel’s performance was not based on sound strategy.  Mallett
v. State, 65 S.W.3d 59, 63
(Tex. Crim. App. 2001); see Thompson,
9 S.W.3d at 813 (holding that record must affirmatively demonstrate alleged
ineffectiveness).

2.            
Analysis

Here, appellant has failed to provide
any record of trial counsel’s strategy in investigating the case and in
determining whom to call as witnesses, and we will not speculate regarding her
strategy.  See Bone, 77 S.W.3d at 833.  Thus, appellant has failed to
affirmatively demonstrate trial counsel’s alleged ineffectiveness and has not
overcome the strong presumption that trial counsel acted pursuant to a sound
trial strategy.  See Williams,
301 S.W.3d at 687; Thompson, 9 S.W.3d at 813.  Furthermore, as we have
already discussed in our analysis of appellant’s claims that he was entitled to
a new trial based on newly discovered evidence, the testimony of Alisha and
Lois Horton was not likely to lead to a different result in a new trial.  Thus,
appellant cannot show a reasonable probability that, but for his trial counsel’s
unprofessional errors, the result of the proceeding would have been different.  See
Strickland, 466
U.S. at 694, 104 S. Ct. at 2068; Thompson, 9 S.W.3d at 812.

We overrule appellant’s second issue.

D.           
Voluntariness of Appellant’s Guilty Plea

Finally, appellant argues in part of his first issue that
his plea of guilty to the indecency with a child charge was unknowing because
he “was not aware of all of the facts and, therefore, not aware of all of his
possible defenses.”  

To satisfy due process, a guilty plea “must be entered
knowingly, intelligently, and voluntarily.”  Kniatt v. State, 206 S.W.3d
657, 664 (Tex. Crim. App. 2006); see also Tex. Code Crim. Proc. Ann. art. 26.13(b) (Vernon Supp. 2011)
(requiring that guilty plea be made voluntarily and freely).  In examining the
voluntariness of a guilty plea, we examine the record as a whole.  Martinez
v. State, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998).  When the record
reflects that a defendant was duly admonished by the trial court before
entering a guilty plea, it constitutes a prima facie showing that the plea was
both knowing and voluntary.  Id.  The burden then shifts to the
defendant to show that he entered the plea without understanding the
consequences of his actions and was harmed as a result.  Id.  A plea is
not involuntary because the defendant did not correctly assess every relevant
factor entering into his decision.  Ex parte Evans, 690 S.W.2d 274, 277
(Tex. Crim. App. 1985).

Here, the record reflects that appellant received
comprehensive oral and written admonishments from the trial court and his trial
counsel prior to entering his guilty plea.  Appellant signed written
admonishments, and he orally assured the trial court on the record that he
understood the charges and the range of punishment, that he discussed his plea
with his attorney and was satisfied with her representation of him, and that he
entered the plea freely and voluntarily because he was “guilty and for no other
reason.”  These admonishments and appellant’s assurances of his understanding
create a prima facie showing that he entered his plea knowingly and
voluntarily.  See Martinez, 981 S.W.2d at 197.  

To meet his burden of showing that he entered the plea
without understanding the consequences of his actions and was harmed as a
result, appellant argues that he would not have pleaded guilty if he had been
aware that the complainant had recanted her allegations to Alisha Horton. 
However, Alisha Horton’s affirmative testified at the motion for new trial hearing
that the complainant did not recant any of the allegations resulting in the
charge for indecency with a child—the charge to which appellant pleaded
guilty.  Thus, appellant has failed to meet his burden that his plea was
unknowing or involuntary due to lack of important information or testimony.  See
id.

We overrule the remainder of appellant’s first issue. 

                                                                            
Conclusion

We affirm the judgment of the trial court.

 

 

                                                                        Evelyn
V. Keyes

                                                                        Justice


 

Panel consists of Justices Keyes, Higley, and Massengale.

Do not publish.   Tex. R. App. P.
47.2(b).









[1]
        See Tex. Penal Code Ann.
§ 21.11 (Vernon 2011).





[2]
        See Tex. Penal Code Ann.
§ 22.021 (Vernon Supp. 2011).

 





[3]
        The charge for aggravated sexual assault of a child was assigned trial
court cause number 09CR3646 and resulted in appeal number 01-10-00749-CR.  The
charge for indecency with a child was assigned trial court cause number
09CR3647 and resulted in appeal number 01-10-00906-CR.